IN THE UNITED STATES BANKRUPCTY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FLEMING COMPANIES, INC., et al.,[1]<br><br>Debtors. | Chapter 11<br>Bky. Case No. 03-10945 (MFW)<br>(Jointly Administered) |
| FLEMING COMPANIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>TARGET CORPORATION,<br><br>Defendant. | Adv. Proc. No. 04-52747 (MFW) |

### DEFENDANT TARGET CORPORATION'S
### MEMORANDUM OF LAW IN OPPOSITION TO
### THE PCT'S MOTION FOR LEAVE TO AMEND PLEADINGS

FAEGRE & BENSON LLP
Wendy J. Wildung
Dennis M. Ryan
James D. H. Loushin
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
(612) 766-7000

ASHBY & GEDDES
William Bowden (I.D. # 2553)
Joseph C. Handlon (I.D. #3952)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888

*Attorneys for Defendant Target Corporation*

Date: January 31, 2005.

---

[1] The Debtors were the following entities: Core-Mark International, Inc.; Fleming Companies, Inc.; ABCO Food Group, Inc.; ABCO Markets, Inc.; ABCO Realty Corp.; ASI Office Automation, Inc.; C/M Products, Inc.; Core-Mark Interrelated Companies, Inc.; Core-Mark Mid-Continent, Inc.; Dunigan Fuels, Inc.; Favar Concepts, Ltd.; Fleming Foods Management Co., L.L.C.; Fleming Foods of Texas, L.P.; Fleming International, Ltd.; Fleming Supermarkets of Florida, Inc.; Fleming Transportation Service, Inc.; Food 4 Less Beverage Company, Inc.; Fuelserv, Inc.; General Acceptance Corporation; Head Distributing Company; Marquise Ventures Company, Inc.; Minter-Weisman Co.; Piggly Wiggly Company; Progressive Realty, Inc.; Rainbow Food Group, Inc.; Retail Investments, Inc.; Retail Supermarkets, Inc.; RFS Marketing Services, Inc.; and Richmar Foods, Inc.

# TABLE OF CONTENTS

|  | Page(s) |
|---|---|
| TABLE OF CONTENTS | i |
| TABLE OF AUTHORITIES | ii |
| INTRODUCTION | 1 |
| STATEMENT OF FACTS | 2 |
| ARGUMENT: THE COURT SHOULD DENY THE MOTION | 6 |
| I. Rule 16(b) Of The Federal Rules Of Civil Procedure Governs The PCT's Motion | 6 |
| II. The PCT Has Not Shown Good Cause To Grant Its Motion | 7 |
| III. The PCT's Proposed Amendments Would Significantly Alter And Expand This Case | 9 |
| IV. Target Would Be Prejudiced If The PCT's Proposed Amendments Were Allowed | 11 |
| V. The PCT's Motion Does Not Satisfy Even The More Liberal Standard Of Rule 15(a) | 12 |
| CONCLUSION | 14 |

# TABLE OF AUTHORITIES

Page(s)

## FEDERAL CASES

*Adams v. Gould, Inc.*, 739 F.2d 858 (3d Cir. 1984) .................................................................. 13

*Cureton v. NCAA*, 252 F.3d 267 (3d Cir. 2001) ...................................................................... 13

*Eastern Minerals & Chemicals Co. v. Mahan*, 225 F.3d 330 (3d Cir. 2000) .......................... 8

*Gonzalez v. Comcast Corp.*, 2004 U.S. Dist. LEXIS 17896 (D. Del. Aug. 25, 2004) ............................................................................................................................................. 8

*Grochowski v. Phoenix Construction*, 318 F.3d 80 (2d Cir. 2003) ........................................ 11

*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 1992) ............................... 6, 7

*Koplove v. Ford Motor Company*, 795 F.2d 15 (3d Cir. 1986) ................................................ 7

*Leary v. Daeschner*, 349 F.3d 888 (6th Cir. 2003) ........................................................ 6, 8, 11

*Miller Products Co. v. Veltek Associates, Inc.*, 218 F.R.D. 425 (D. Del. 2003) .................... 14

*O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F.3d 152 (1st Cir. 2004) ........................ 6, 7, 8

*Parker v. Columbia Pictures Indus.*, 204 F.3d 326 (2d Cir. 2000) .................................. 6, 7, 11

*Rainy Lake One Stop, Inc. v. Marigold Foods, Inc. (In re: Milk Prods. Antitrust Litig.)*, 195 F.3d 430 (8th Cir. 1999) ............................................................... 6, 13, 14

*S&W Enters. v. SouthTrust Bank of Ala.*, 315 F.3d 533 (5th Cir. 2003) .................................. 6

*Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417 (11th Cir. 1998) .................................................. 6, 7

*Southwestern Bell Telephone Co. v. City of El Paso*, 346 F.3d 541 (5th Cir. 2003) ............................................................................................................................................. 8, 11

*Vision Metals, Inc. v. SMS Demag, Inc. (In re Vision Metals, Inc.)*, 311 B.R. 692 (Bankr. D. Del. 2004) ........................................................................................................ 13

# FEDERAL STATUTES

Fed. R. Civ. P. 15(a) ............................................................................. 1, 6, 7, 12, 13

Fed. R. Civ. P. 16(b) ............................................................................................ 1, 6, 7

# INTRODUCTION

Plaintiff, the Post-Confirmation Trust of Fleming Companies, Inc. ("PCT" or "Fleming"), appears to have embraced the old adage that desperate times call for desperate measures.

After nine months of extensive discovery that ended earlier this month, defendant Target Corporation ("Target") moved for partial summary judgment in its favor on all but a portion of the three causes of action alleged in the PCT's Complaint. Six days later, the PCT brought a motion for leave to serve and file an Amended Complaint containing (1) a new factual allegation in Count III, and (2) an entirely new Count IV. The PCT's motion was brought nearly six months after the deadline for amendments set forth in the Court's Case Management Order. It is a transparent attempt to avoid losing in the face of Target's meritorious motion for summary judgment or subsequently at trial.

The PCT's brief in support of its motion for leave to amend ("PCT's Memo.") omits certain key facts and ignores the applicable law. Because the PCT seeks to amend its pleading after the deadline for amendment set forth in the Court's Case Management Order, the PCT must satisfy the "good cause" standard of Rule 16(b) of the Federal Rules of Civil Procedure (made applicable under Bankruptcy Rule 7016), not just Fed. R. Civ. P. 15(a). The PCT does not come close to meeting this standard (or even the more liberal standard of Rule 15(a)). The PCT did not act diligently, has no legitimate excuse for its long delay in seeking amendment, and ignores the prejudice to Target if its proposed amendments were allowed at this late stage of the case.

For all of these reasons, as set forth more fully hereinafter, the PCT's motion for leave to amend should be denied.

## STATEMENT OF FACTS[2]

Fleming commenced this adversary proceeding by the filing of its Complaint dated February 20, 2004.

On March 25, 2004, the Court entered a Case Management Order that had been stipulated to by the parties. The Case Management Order, at ¶C, set July 30, 2004 as the deadline for either party to add new parties or to amend its pleadings. Fleming has never sought or obtained any extension of this deadline. (Wildung Aff. ¶2.)

The Case Management Order also set a deadline of November 5, 2004 for fact discovery, but allowed the parties to amend that deadline by agreement without further order of the Court. (See Case Management Order, ¶D.) The parties agreed to extend the deadline for fact discovery several times, in order to accommodate an extensive deposition schedule. Ultimately, the parties agreed upon a deadline of January 11, 2005 for fact discovery. As of January 11, 2005, all fact discovery was completed with one exception. Counsel for the parties agreed that a one-hour deposition of a non-party could be taken on January 27, 2005, because the non-party was not available to be deposed during the discovery period. (Wildung Aff. ¶¶3-4.)

The period for taking discovery in this action was more than nine months long. During that period, both sides took substantial discovery. In all, the parties deposed 24 fact witnesses. Because many of the depositions involved former officers and employees of Fleming, depositions had to be taken in five states: Delaware, Florida, Texas, Missouri, and Minnesota. (Wildung Aff. ¶5.)

---

[2] These facts are based upon those set forth in the Affidavit of Wendy J. Wildung ("Wildung Aff.") that is attached to this memorandum as Exhibit A; upon exhibits to the Affidavit of Damian D. Capozzola ("Capozzola Aff. Ex. __") that the PCT submitted in support of its motion; and upon documents previously filed with the Court, as identified herein.

In addition to the deposition discovery, both parties served and responded to written discovery. Target responded to nine sets of interrogatories, nine sets of requests for admissions, and seven sets of document requests, all served by the PCT. The PCT has responded to two sets of interrogatories and two sets of document requests served by Target. (Wildung Aff. ¶6.)

On January 14, 2005, the last date for filing dispositive motions as stipulated by the parties, Target served and filed a motion seeking partial summary judgment on: (a) Count I of the Complaint, alleging that Target committed fraud by making a promise in a January 23, 2002 Letter Agreement ("1/23/02 Letter Agreement") that Target never intended to keep; (b) Count II of the Complaint, alleging that Target breached the 1/23/02 Letter Agreement; and (c) Count III of the Complaint, alleging that Target wrongfully withheld funds that it owed to Fleming on prepetition invoices. As grounds for its motion, Target largely relied upon the testimony given by present and former Fleming employees at their depositions. (Wildung Aff. ¶7; *see* Defendant Target Corporation's Memorandum of Fact and Law in Support of Motion for Partial Summary Judgment filed January 14, 2005.)

Four days later, on January 18, 2005, the PCT, through its counsel Damian Capozzola, told Target for the first time that the PCT wished to amend its Complaint. The PCT asked Target to consent to certain proposed amendments. At no time, then or now, has the PCT or its counsel offered any explanation as to why the PCT failed to raise the subject of its proposed amendments at an earlier date. (Wildung Aff. ¶8.)

Because Target had no knowledge during the discovery period of the positions that the PCT now proposes to take, as reflected in its proposed amendments, Target did not take discovery of the specific facts and issues that the PCT proposes to put in dispute by its

amendments. Had Target known about such issues during the discovery period, its counsel would have asked different and additional questions of at least eight Fleming witnesses on at least the following topics:

- The bases for the allegations in the Amended Complaint that Target put a hold on "prepetition invoices."

- The manner in which Fleming handled and accounted for its receipt of funds from Target when multiple invoices were due, particularly as of the time the bankruptcy case commenced.

- How Fleming's new allegations relate to the terms of Fleming's sell plans, which Fleming elsewhere has claimed govern the parties' business relationships.

- The specific discussions held between Fleming employees and Target employees in the months surrounding the bankruptcy filing about prepetition invoices and the rebates claimed by Target.

- Whether there were any communications between Fleming and Target about measuring service levels on an annualized basis, and if so, what those communications were.

- How, where, when, and for whom Fleming calculated service levels on an annualized basis, if at all.

- The meaning of certain language in the 1/23/02 Letter Agreement, and any discussions, internally or between Target and Fleming, about such language.

- Whether and how language like the language at issue is used in the grocery business.

- What Fleming employees thought about certain language in the 1/23/02 Letter Agreement, and the events before and after January 23, 2002 that might undercut that testimony.

- Discussions within Fleming after Target stopped doing business with Fleming as of June 6, 2003 about how Target's decision should be viewed.

- Damages suffered by Fleming, if any, particularly after April 30, 2003.

Target also would have served different and additional written discovery on the above topics. (Wildung Aff. ¶9.)

During the course of the litigation, Target has adopted certain strategies, and taken certain positions, based upon its understanding of the PCT's theories as alleged in the Complaint. Target would have adopted different strategies, and taken different positions, on some points had it known about the PCT's proposed amendments earlier. (Wildung Aff. ¶10.)

Trial now is scheduled to commence on March 14, 2005. (*See* Case Management Order at ¶C.) It would be impossible for Target to be ready for trial on the PCT's proposed new claims by that date. Instead, discovery would need to be reopened, and both parties would need to spend considerable additional effort and money on discovery, before they could be ready to try the PCT's proposed new claims. (Wildung Aff. ¶11.)

There is no evidence in the discovery record to support the theory being advanced by the PCT in support of its proposed new Count IV that service levels under the 1/23/02 Letter Agreement were to be measured on an annualized basis. Nor is there any evidence in the discovery record of any damages that Fleming suffered as a result of Target stopping doing business with Fleming as of June 6, 2003. The PCT has answered interrogatories and document requests, and provided witnesses to testify, about Fleming's claimed damages. In presenting that evidence, the PCT consistently has taken the position that the damages that it is claiming due to Target's alleged wrongdoing are calculated through April 30, 2003. (*See* the PCT's damages calculation, A.282 in Appendix to Defendant Target Corporation's Memorandum of Points and Authorities in Support of Motion for Partial Summary Judgment filed January 14, 2005.) In order to recover anything on its proposed new Count IV, the PCT would need to come up with an entirely new damages theory, and with evidence to support that theory. (Wildung Aff. ¶12.)

# ARGUMENT: THE COURT SHOULD DENY THE MOTION.

## I. Rule 16(b) Of The Federal Rules Of Civil Procedure Governs The PCT's Motion.

Because this Court previously entered a Case Management Order setting a deadline for amendment of pleadings, the PCT is not entitled to have its motion considered under the generally liberal standards of Rule 15(a) of the Federal Rules of Civil Procedure, made applicable under Bankruptcy Rule 7015. The federal circuit courts consistently have held that Rule 16(b) of Federal Rules of Civil Procedure, made applicable under Bankruptcy Rule 7016, governs motions to amend filed after the applicable deadlines. *See, e.g., O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F.3d 152, 154-55 (1st Cir. 2004); *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003); *S&W Enters. v. SouthTrust Bank of Ala.*, 315 F.3d 533, 536 (5th Cir. 2003); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000); *Rainy Lake One Stop, Inc. v. Marigold Foods, Inc. (In re: Milk Prods. Antitrust Litig.)*, 195 F.3d 430, 437-38 (8th Cir. 1999); *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) (per curiam); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992).

Rule 16(b) allows a court to enter a scheduling order that sets deadlines for later proceedings in the action, including the amendment of pleadings. The purpose of limiting the period for amending the pleadings is to ensure "that at some point both the parties and the pleadings will be fixed." Advisory Committee Notes to the 1983 Amendments to Fed. R. Civ. P. 16(b). Under Rule 16(b), a pretrial scheduling order "*shall not* be modified except upon a showing of *good cause* and by leave of the district judge ...."

Fed. R. Civ. P. 16(b) (emphasis added). The "good cause" standard is strictly applied. As the Third Circuit Court of Appeals has noted:

> [S]cheduling orders are at the heart of case management. If they can be disregarded without a specific showing of good cause, their utility will be severely impaired.

*Koplove v. Ford Motor Company*, 795 F.2d 15, 18 (3d Cir. 1986); *see also Sosa*, 133 F.3d at 1419 ("If we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure."); *O'Connell*, 357 F.3d at 155 ("liberally granting motions to amend the pleadings -- filed after a party has disregarded the scheduling order deadline -- would effectively nullify the purpose of Rule 16(b)(1)") (citations omitted); *Johnson*, 975 F.2d at 610 ("Disregard of the [scheduling] order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier. Rule 16 was drafted to prevent this situation, and its standards may not be short-circuited by an appeal to those of Rule 15.").

## II.    The PCT Has Not Shown Good Cause To Grant Its Motion.

The "good cause" standard of Rule 16(b) focuses upon the diligence of the party seeking the amendment. The moving party *must* demonstrate that scheduling deadlines could not or cannot be met despite the movant's diligent efforts. *See* Advisory Committee Notes (deadlines may be extended if the court determines that the deadlines "cannot reasonably be met despite the diligence of the party seeking the extension"); *e.g., O'Connell*, 357 F.3d at 155; *Parker*, 204 F.3d at 340. The Court also may consider the prejudice to the opposing party if the amendment were to be granted. *See, e.g., O'Connell*, 357 F.3d at 155;

*Leary*, 349 F.3d at 906; *Southwestern Bell Telephone Co. v. City of El Paso*, 346 F.3d 541, 546-47 (5th Cir. 2003).

Applying this standard, it is clear that the PCT has not shown (or even attempted to show) good cause for modifying the deadline for amendments to the pleadings set forth in the Court's Case Management Order. The PCT has not offered any evidence that it acted with diligence in attempting to meet the Court's deadline, nor has the PCT offered any explanation as to why it could not have moved to amend its Complaint sooner. In this Circuit, these are more than sufficient grounds to deny the PCT's motion. *Eastern Minerals & Chemicals Co. v. Mahan*, 225 F.3d 330, 340 (3d Cir. 2000) (affirming denial of motion for leave to amend after the deadline for amendment had passed, where movant failed to provide any explanation for its delay in filing the motion or to demonstrate that it had acted with diligence); *Gonzalez v. Comcast Corp.*, 2004 U.S. Dist. LEXIS 17896, at *3 (D. Del. Aug. 25, 2004) (Exhibit B hereto) (motion for leave to amend denied, regardless of whether defendants were prejudiced, because plaintiffs had not shown why they could not have asserted their motion within the scheduling order deadline). The fact that the PCT's motion was brought nearly six months after the July 30, 2004 deadline for amendments indicates a lack of diligence. *See, e.g., Eastern Minerals*, 225 F.3d at 340 (denying motion brought six months after deadline in scheduling order); *O'Connell*, 357 F.3d at 155 (denying motion brought five months after deadline in scheduling order); *Gonzalez*, 2004 U.S. Dist. LEXIS 17896, at *2-*3 (denying motion brought seven months after deadline in scheduling order).

There is no adequate explanation for the PCT's delay in bringing its motion. All of the "evidence" that the PCT points to in its motion papers as the bases for its proposed amendments -- (1) the letter from Gerard Bodell of Target to Fleming dated May 6, 2003

concerning the hold placed on Target's invoices (Depo. Ex. 109, Capozzola Aff. Ex. A); (2) the 1/23/02 Letter Agreement (Capozzola Aff. Ex. B); and (3) the letter from Target to Scott Nicholson of Fleming dated May 29, 2003 (Depo. Ex. 132, Capozzola Aff. Ex. E) -- were documents that Target sent to Fleming in the course of the parties' business relationship in 2002 and 2003, and that *Fleming produced to Target in discovery*. Thus, the PCT cannot claim that it lacked knowledge of the bases for its proposed new claims before the July 30, 2004 deadline for amendments.

### III. The PCT's Proposed Amendments Would Significantly Alter And Expand This Case.

From the sequence of events, what actually transpired is evident. The PCT and its attorneys received Target's motion for partial summary judgment on January 14, 2005, realized that Target should prevail based upon the legal theories and discovery record now in the case, and decided to invent some brand new theories. The PCT attempts to characterize its brand new theories as mere "clarifications" (*see* PCT's Memo. at ¶¶3-5), but the Court should not be fooled. The PCT's proposed new amendments, if allowed, would significantly alter and expand this case.

Regarding its proposed amendment to Count III, the PCT argues that "the most important point to see is that the key language of Count III of Fleming's Complaint simply passed through Target representation of events ...." (PCT's Memo. at ¶11, citing Compl. ¶44.) The PCT fails to acknowledge that in the "Facts" section of its Complaint, at ¶¶17-29, Fleming affirmatively alleged that Target's hold related to prepetition invoices:

> Additionally, when Fleming filed its bankruptcy petition on April 1, 2003, Target owed Fleming funds for unpaid invoices, product-related charges, and unauthorized deductions and penalties (other than NCPs). Nearly half of these funds *comprised prepetition invoices upon which Target put a hold expressly*

> *as a means to ensure that Target would receive certain rebates* Target
> believed were due from Fleming. This unilateral action by Target willfully
> violated the automatic stay and the rights of similarly situated creditors.
> Fleming believes that Target was not and is not entitled to the rebates, due to
> Target's various violations of the parties' agreement. Fleming repeatedly
> demanded payment of this money. Target refused.

(Compl. ¶29.) (Emphasis added.) Thus, the PCT's motion to amend Count III is an attempt to do more than just "clarify" a pleading: it is an attempt to retract a factual admission that Fleming previously made, and that Target relied upon. Because of Fleming's admission, Target did not conduct discovery into the prepetition vs. postpetition debate during the discovery period.

The PCT's proposed new Count IV is another attempted end-run around summary judgment. Count IV is premised upon the notion that Target might not have been entitled to stop doing business with Fleming after the bankruptcy petition was filed because the "agreed-upon service levels" referenced in the parties' 1/23/02 Letter Agreement might mean service levels calculated on an annualized basis. (In the 1/23/02 Letter Agreement (Capozzola Aff. Ex. B), Target's obligation to continue buying from Fleming was expressly made contingent upon Fleming "delivering agreed-upon service levels.") According to the PCT, if "agreed-upon service levels" mean annualized levels, then Target would have needed to wait (presumably for another year) before Target ceased doing business with Fleming due to Fleming's admittedly poor service levels. (*See* PCT's Memo. at ¶¶17-18.) One big problem with this last-minute theory is that there is no evidence to support it. No witnesses or documents addressed these critical issues in discovery -- in part because no one thought to ask about it them. And of course, no one thought to ask because the PCT and its attorneys

only recently invented this new theory.[3] Similarly, the PCT has not identified any damages associated with its newly-invented theory, much less developed any evidence that would substantiate damages. (Wildung Aff. ¶12.)

## IV. Target Would Be Prejudiced If The PCT's Proposed Amendments Were Allowed.

Because of the obvious prejudice to the non-moving party, courts routinely hold that a movant who waits until after the close of discovery and/or summary judgment to seek leave to amend its pleadings has not met the "good cause" standard of Rule 16(b). *See, e.g., Leary*, 349 F.3d at 908; *Southwestern Bell*, 346 F.3d at 546-47; *Grochowski v. Phoenix Construction*, 318 F.3d 80, 86 (2d Cir. 2003); *Parker*, 204 F.3d at 340-41. If the PCT's proposed amendments were allowed at this late stage of this action, Target would be prejudiced in at least four ways.

First, some of the time, money, and effort that Target devoted to discovering and defending against the PCT's original claims will have been wasted. This is because the only way to defend against the PCT's proposed amendments is to redo much of the previous discovery -- 24 depositions in five states, plus substantial written discovery -- in order to pose different and additional questions. (*See* Wildung Aff. ¶¶5-6, 9.)

---

[3] The PCT misleads the Court when it suggests that Count IV is based upon "Target's construction of the [1/23/02] agreement" (PCT's Memo. at ¶18) and that "in its recently filed summary judgment motion Target has adopted the position that the January 23, 2002 contract was supposed to be measured on an annual basis" (PCT's Memo. at ¶5). The Court can see from its own review of Target's motion papers that: (1) for purposes of its motion, Target is accepting as true the testimony of Fleming's witnesses about the meaning of the 1/23/02 Letter Agreement, which is different from advocating a "Target position"; and (2) the Fleming witnesses testified that the volume of business was to be measured on an annualized basis, not that the "agreed-upon" service levels were to be measured on an annualized basis.

Second, the trial date would need to be postponed if the proposed amendments were allowed. The PCT would need to come up with a new damages theory and to generate "evidence" to support Count IV. Target, for its part, would need more time to conduct additional discovery, to bring other dispositive motions, and to revise its pretrial preparation. All this would deprive Target of the "just, speedy, and inexpensive determination" of this action that Rule 7001 of the Bankruptcy Rules prescribes.

Third, Target would need to conduct discovery on new topics, at considerable expense. The discovery on a new damages theory alone is likely to cost tens of thousands of dollars.[4]

Fourth, Target may be prejudiced by certain strategies that it has adopted and certain positions that it has taken in reliance upon the original Complaint, and that cannot now be abandoned. This type of prejudice lies beyond the Court's ability to cure.

For all of these reasons, "good cause" to grant the PCT's motion would not exist even if the PCT had acted with diligence.

## V. The PCT's Motion Does Not Satisfy Even The More Liberal Standard Of Rule 15(a).

Even if Rule 15(a) governed the PCT's motion, the Court should deny the motion because the motion is untimely and prejudicial.

---

[4] As the Court is aware, Fleming sold substantially all of its grocery wholesale business assets in August 2003. Presumably the PCT's damage theory on Count IV will be that the bankruptcy Estate would have been able to sell Fleming's assets at a much higher price had Target continued to do business with Fleming after June 6, 2003. To defend against this damages theory, Target would need to conduct thorough discovery into the profitability of Fleming's various business units, the sale process, and the buyer's valuation of the assets sold. This likely would include discovery of C&S and other interested buyers, as well as Fleming witnesses. In addition, Target likely would need to engage an expert.

Rule 15(a) provides that a party may amend its pleading "by leave of court", and that leave "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Leave may be denied "if a plaintiff's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the opposing party." *Cureton v. NCAA*, 252 F.3d 267, 273 (3d Cir. 2001) (*citing Foman v. Davis*, 371 U.S. 178, 182 (1962)). Although the mere passage of time, without more, does not defeat a motion for leave to amend,

> at some point the delay will become "undue", placing an unwarranted burden on the court, or will become "prejudicial", placing an unfair burden on the opposing party.

*Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir. 1984).

Here, the same factors that compel the denial of the PCT's motion under Rule 16(b) justify the denial of that motion under Rule 15(a). In an opinion issued just last year, this Court denied a Rule 15(a) motion on the basis of undue delay

- where, as here, the motion for leave to amend was brought many months (14 months there, 11 months here) after the original Complaint; and

- where, as here, the debtor offered no explanation for the delay; and

- where, as here, the proposed Amended Complaint did not contain any newly discovered facts.

*Vision Metals, Inc. v. SMS Demag, Inc. (In re Vision Metals, Inc.)*, 311 B.R. 692, 702 (Bankr. D. Del. 2004). And undue delay or not, the Court should deny the PCT's motion because of the demonstrable prejudice to Target if the amendments were allowed. *E.g., Cureton*, 252 F.3d at 275-76 (upholding denial of leave to amend where non-moving party "would be prejudiced by having to engage in burdensome new discovery and significant new trial preparation"); *Milk Prods. Antitrust Litig.*, 195 F.3d at 438 (reopening discovery and

further delay is "precisely the sort of prejudice that justifies denial of a motion to amend under Rule 15(a)"); *Miller Prods. Co. v. Veltek Assocs., Inc.*, 218 F.R.D. 425, 427 (D. Del. 2003) (denying leave to amend because reopening discovery would prejudice the non-moving party and delay trial).

## CONCLUSION

The Court should deny the PCT's motion for leave to amend on the grounds that it is untimely under the Case Management Order, that the PCT has not shown good cause to alter the Case Management Order, and that Target would be prejudiced if the amendments were allowed at this late date.

Date: January 31, 2005.

Respectfully submitted,

**ASHBY & GEDDES**

/s/

William P. Bowden, No. 2553
Joseph C. Handlon, No. 3952
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
Telephone: (302) 654-1888
Facsimile: (302) 654-2067

- and -

**FAEGRE & BENSON LLP**
Wendy J. Wildung
Dennis M. Ryan
James D. H. Loushin
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Telephone: (612) 766-7000
Facsimile: (612) 766-1600

ATTORNEYS FOR DEFENDANT TARGET CORPORATION

M2:20688150.01