IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| Fleming Companies, Inc., | ) ) ) | Case No. 03-10945 (MFW) Jointly Administered |
| Debtors,[1] | ) ) | |
| Fleming Companies, Inc., | ) ) | |
| Plaintiff, | ) ) | Adversary Proceeding Case No. 04-52747 |
| v. | ) ) | |
| Target Corporation, | ) ) | |
| Defendant. | ) ) | **Related to Docket Nos. 60 and 70** |

## PCT'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO AMEND COMPLAINT

---

[1] The former Debtors whose cases are still open are: Core-Mark International, Inc.; Fleming Companies, Inc.; ASI Office Automation, Inc.; C/M Products, Inc.; Core-Mark Interrelated Companies, Inc.; Core-Mark Mid-Continent, Inc.; General Acceptance Corporation; Head Distributing Company; Marquise Ventures Company, Inc.; and Minter-Weisman Co. For linguistic convenience, this motion refers to Fleming Companies, Inc. and the Post-Confirmation Trust simply as "Fleming."

# Table of Contents

SUMMARY OF ARGUMENT ..........................................................................................1

ARGUMENT .......................................................................................................................2

I.  FRCP RULE 15(A) GOVERNS THE PRESENT MOTION TO AMEND
    THE COMPLAINT. ..................................................................................................2
    A.  In the Third Circuit, Fed.R.Civ.P. 15(a) governs the application of
        motions to amend the pleadings, regardless of the expiration of
        scheduling deadlines. .......................................................................................2
    B.  Target's own cases establish that Rule 15(a) governs in the Third
        Circuit. ..............................................................................................................3

II. UNDER THE LIBERAL PLEADING STANDARDS OF RULE 15(A),
    FLEMING SHOULD BE ALLOWED TO AMEND ITS COMPLAINT. ..............5
    A.  Legal Standards: Under Fed.R.Civ.P. 15(a), leave to amend a
        complaint is liberally granted, and may only be denied if the delay is
        undue, motivated by bad faith, prejudicial to the opposing party, or if
        the amendment would be futile. ......................................................................5
    B.  The requested amendments are not futile. .......................................................7
    C.  Fleming's proposed amendments are not unduly prejudicial, have not
        been unduly delayed, and are not motivated by bad faith. ..............................7
        1.  The Court should grant leave to amend Count III. ..............................7
        2.  The Court should grant leave to amend Count IV. ............................10

III. EVEN IF THE "GOOD CAUSE" STANDARD OF RULE 16 APPLIED --
     WHICH IT DOES NOT -- THE COURT SHOULD STILL GRANT LEAVE
     TO AMEND. ............................................................................................................13

CONCLUSION ..................................................................................................................14

## Table of Citations

**Cases**

Adams v. Gould Inc.,
 739 F.2d 858 (3d Cir. 1984) ............................................................................................... 3, 5

Artman v. Int'l Harvester Co.,
 355 F. Supp. 476 (W.D. Pa. 1972) ......................................................................................... 6

Boileau v. Bethlehem Steel Corp.,
 730 F.2d 929 (3d Cir. 1984) .................................................................................................. 5

Butcher & Singer, Inc. v. Kellam,
 105 F.R.D. 450 (D. Del. 1984) .............................................................................................. 3

Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.,
 295 F. Supp. 2d 430 (D. Del. 2003) ...................................................................................... 2

Comuso v. Nat'l Railroad Passenger Corp.,
 1998 WL 800342 (E.D. Pa. 1998) ....................................................................................... 14

Cornell & Co. v. Occupational Safety & Health Review Comm.,
 573 F.2d 820 (3d Cir. 1978) .................................................................................................. 5

Coventry v. United States Steel Corp.,
 856 F.2d 514 (3d Cir. 1988) .............................................................................................. 3, 5

Cuffy v. Getty Refining & Marketing Co.,
 648 F. Supp. 802 (D. Del 1986) ............................................................................................ 3

Cureton v. Natl'l Collegiate Athletic Assoc.,
 252 F.3d 267 (3d Cir. 2001) .............................................................................................. 4, 6

Dole v. Arco Chemical Co.,
 921 F.2d 484 (3d Cir. 1990) .................................................................................................. 6

Eastern Minerals & Chemicals Co. v. Mahan,
 225 F.3d 330 (3d Cir. 2000) .................................................................................................. 4

Fishbein Family Partnership v. PPG Indus., Inc.,
 871 F.Supp. 764 (D. N.J. 1994) ............................................................................................ 2

Foman v. Davis,
 371 U.S. 178 (1962) .............................................................................................................. 5

Gonzalez, et. al. v. Comcast,
 2004 Lexis 17896 (D. Del. 2004) .......................................................................................... 4

Goodman v. Mead Johnson & Co.,
　　534 F.2d 566 (3d Cir. 1976) .................................................................................. 6

Heyl & Patterson Int'l, Inc. v. F. D. Ric, Inc.,
　　663 F.2d 419 (3d Cir. 1981) ............................................................................... 5, 6

In re Burlington Coat Factory Securities Litigation,
　　114 F.3d 1410 (3d Cir. 1997) ................................................................................ 7

In re Laramie Assoc., Ltd.,
　　1997 WL 67848 (Bankr. E.D. Pa. 1997) ............................................................... 6

In re Vision Metals, Inc.,
　　311 B.R. 692 (D. Del. 2004) ............................................................................. 3, 4

In re Worldwide Direct, Inc.,
　　2003 WL 22000600 (Bankr. D. Del. 2003) ........................................................... 3

Koplove v. Ford Motor Co.,
　　795 F.2d 15 (3d Cir. 1986) .................................................................................... 5

LaVallee Northside Civic Assoc. v. Virgin Islands Coastal Zone Management Commission,
　　866 F.2d 616 (3d Cir. 1989) .................................................................................. 8

Miller Products Co. v. Veltek Assoc., Inc.,
　　218 F.R.D. 425 (D. Del. 2003) .............................................................................. 4

Nycoseal, Inc. v. Parke, Davis & Co.,
　　28 F.R.D. 24 (S. D. N. Y. 1961) ............................................................................ 8

Oshiver v. Levin, Fishbin, Sedran & Berman,
　　38 F.3d 1380 (3d Cir. 1994) .................................................................................. 8

Oster v. Medtronic, Inc.,
　　428 N.W.2d 116 (Minn. Ct. App., 1988) ............................................................ 11

Sellers R.D., et. al. v. AVP Int'l,
　　1989 WL 102927 (E.D. Pa. 1989) ....................................................................... 13

Titanium Metals Corp. v. Elkem Management, Inc.,
　　87 F. Supp. 2d 429 (W.D. Pa. 1998) ..................................................................... 3

U.S. v. Donald Lane Construction,
　　19 F. Supp. 2d 217 (D. Del. 1998) ........................................................................ 5

Wallin v. Fuller,
　　476 F.2d 1204 (5th Cir. 1973) ............................................................................ 2

| | |
|---|---|
| Welton v. Consolidated Rail Corp., 1993 WL 4176 (E.D. Pa. 1993) | 14 |

**Other Authorities**

| | |
|---|---|
| C.J.S Contracts § 322 | 11 |

**Rules**

| | |
|---|---|
| Fed.R.Civ.P. 15 | 2, 3, 8 |
| Fed.R.Civ.P. 15(a) | passim |
| Fed.R.Civ.P. 16 | 2, 4, 13 |
| Fed.R.Civ.P. 16(a) | 2 |
| Fed.R.Civ.P. 16(b) | 1, 2, 3, 4 |

## SUMMARY OF ARGUMENT

1.  Target is incorrect when it alleges that Fed.R.Civ.P. 16(b) governs Fleming's motion for leave to amend. In the Third Circuit, the liberal standards of Fed.R.Civ.P. 15(a) govern a motion for leave to amend a complaint, even if various scheduling deadlines have expired. Rule 16(b) does not trump Rule 15(a) as Target asserts. Rather, in the Third Circuit, Rule 15(a) "moderates" the application of Rule 16(b) in a motion for leave to amend.

2.  But regardless of whether the liberal policy of Rule 15(a) or the good cause standard of Rule 16(b) applies, the Court should grant Fleming's motion. Fleming's delay in seeking to amend Count III and Count IV was neither undue nor motivated by bad faith. Any bad faith here lies at the feet of Target, whose opposition to Fleming's amendment to Count III stems from a larger plan to bootstrap its false May 6, 2003 letter into a favorable summary judgment ruling. As for Count IV, not until late in the discovery period and well after the expiration of the time for amending pleadings did Target first clarify its position that the January 23, 2002 letter agreement should be measured annually.

3.  Fleming has already offered additional discovery to Target; Fleming furthermore believes that any necessary additional discovery can be completed before the trial date but has no objection to a short postponement of the trial date if Target desires additional time or the Court otherwise deems that to be necessary. Under these circumstances, form must not prevail over substance: the Court should grant Fleming leave to amend.

//

//

# ARGUMENT

## I. FRCP RULE 15(A) GOVERNS THE PRESENT MOTION TO AMEND THE COMPLAINT.

### A. In the Third Circuit, Fed.R.Civ.P. 15(a) governs the application of motions to amend the pleadings, regardless of the expiration of scheduling deadlines.

4. Target misstates Third Circuit case law when it argues that the good cause standard of Rule 16(b) overrides the liberal standard of Rule 15(a) after the expiration of scheduling deadlines. Although a few courts outside the Third Circuit have adhered to this rule, the Third Circuit and many other Circuits have not adopted this holding. Rather, in the Third Circuit, as in many other Circuits, Rule 16(b) is read "in light of" Rule 15(a). The Third Circuit and these courts hold that Rule 15(a) "moderates" Rule 16(b). The liberal standard of Rule 15(a) governs the good cause standard of rule 16(b), not the other way around. See Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc., 295 F. Supp. 2d 430, 433 (D. Del. 2003) ("Given the Supreme Court's counsel to the 'lower federal courts to heed the liberal policy of amendment embodied in Rule 15(a),' Dunlop has demonstrated enough under Fed.R.Civ.P.16(b) to permit modification of the Order.") (applying liberal standard of 15(a) in granting leave to amend under Fed.R.Civ.P.16(b)); Fishbein Family Partnership v. PPG Indus., Inc., 871 F.Supp. 764, 767-768 (D. N.J. 1994) (declining to impose Rule 16(a) standards on motion for leave to amend filed months after expiration of scheduling deadline to amend pleadings).

5. Wallin v. Fuller, 476 F.2d 1204 (5th Cir. 1973) also supports Fleming's view:

> Unbending adherence to the strictures of Rule 16 would, however, frustrate another broad policy of the Federal Rules favoring liberality of amendment. This policy is embodied in Rule 15, which deals with amendments to the pleadings. **It is unlikely that the pretrial order under Rule 16 was intended to make the pleadings, and therefore Rule 15, obsolete.**
> 
> ...
> Courts have therefore widely recognized that **Rule 16 must be read in light of Rule 15**, and that in some circumstances the policy of **Rule 15 should moderate the strictures of Rule 16.** Wallin, 476 F.2d at 1209-1210 (citations omitted) (emphasis added).

2

6. The Third Circuit routinely applies Rule 15(a) without mention of Rule 16(b), even after the expiration of scheduling deadlines. See e.g., Cuffy v. Getty Refining & Marketing Co., 648 F. Supp. 802, 805-807 (D. Del. 1986) (granting leave to amend complaint under 15(a) even though scheduling deadline to file motion to amend pleadings had passed, and defendant had filed motion for summary judgment); Coventry v. United States Steel Corp., 856 F.2d 514 (3d Cir. 1988) (reversible error under Fed.R.Civ.P. 15(a) for district court to deny leave to amend the complaint even though discovery had closed eight months prior to the filing of the motion and even though case was on the court's trial list); Butcher & Singer, Inc. v. Kellam, 105 F.R.D. 450 (D. Del. 1984) (granting leave to amend under Fed.R.Civ.P. 15(a) even though discovery had closed seven months earlier); Titanium Metals Corp. v. Elkem Management, Inc., 87 F. Supp. 2d 429, 531 fn.6 (W.D. Pa. 1998) (granting leave to amend even though discovery had closed and pretrial statements had been filed) (citing Coventry, supra.); In re Worldwide Direct, Inc., 2003 WL 22000600 (Bankr. D. Del. 2003) (granting leave to amend under Fed.R.Civ.P. 15(a) even though discovery deadline had passed).

**B. Target's own cases establish that Rule 15(a) governs in the Third Circuit.**

7. Target fails to cite to any Third Circuit case for the proposition that Fed.R.Civ.P. Rule 16(b) displaces Rule 15(a) when scheduling deadlines have expired. Target's own Third Circuit cases confirm that the appropriate standard is Rule 15(a), not Rule 16(b). In Adams v. Gould Inc., 739 F.2d 858 (3d Cir. 1984), the Third Circuit applied Rule 15(a) in evaluating a motion to file a second amended complaint which was filed four years after the lawsuit was brought and after summary judgment was granted for the defendants. Adams, 739 F.2d at 863-864 (finding reversible error for district court to deny leave to amend under "Fed.R.Civ.P. 15 [which] embodies the liberal pleading philosophy of the federal rules"). Similarly, in In re Vision Metals, Inc., the court applied Fed.R.Civ. 15(a) in determining whether to grant leave to amend a complaint filed more than a year after plaintiff filed suit and after dismissal of plaintiff's proceeding against the same defendant in another jurisdiction. In re Vision Metals, Inc., 311

B.R. 692, 701 (D. De. 2004). The plaintiffs in Cureton v. Nat'l Collegiate Athletic Assoc. filed their motion to amend their complaint after the district court entered summary judgment and after the Court of Appeals entered judgment for defendants -- more than three years after they filed their complaint. In evaluating plaintiffs' motion to amend their complaint, the Third Circuit applied Fed.R.Civ.P. 15(a). Cureton v. Natl'l Collegiate Athletic Assoc., 252 F.3d 267, 272-273 (3d Cir. 2001). Similarly, the court in Miller Products Co. v. Veltek Assoc., Inc., 218 F.R.D. 425 (D. Del. 2003) applied Fed.R.Civ.P. 15(a) in evaluating a motion for leave to file an amended counterclaim which was filed nearly a year and a half after the complaint was filed.

8. Eastern Minerals & Chemicals Co. v. Mahan, 225 F.3d 330 (3d Cir. 2000) does not stand for the proposition that Rule 16(b) displaces Rule 15(a) when scheduling deadlines expire because the Court there deliberately chose not to address this issue. The plaintiffs in Eastern Minerals argued the its motion for leave to amend should be decided under 15(a), not Rule 16. The court, however, decided not to address this issue, ruling that denial of leave was proper under both 15(a) and 16(b). "The District Court concluded that it need not examine Eastern's Rule 15(a) argument, but nonetheless noted that there was sufficient reason to deny Eastern's motion under rule 15(a) due to Eastern's unexplained delay in moving to amend." Id. at 340.

9. Gonzalez, et. al. v. Comcast, 2004 Lexis 17896 (D. Del. 2004) also does not stand for the proposition that Rule 16(b) trumps Rule 15(a) when scheduling deadlines expire because the court is completely silent on this issue. In Gonzales, the plaintiffs sought to amend their complaint to add a new defendant and assert additional causes of action after the scheduling deadline. Id. at *2. The court denied the motion under the "good cause" standard of Rule 16. Id. at *3. However, the court did not hold that Rule 16 trumped Rule 15 because of the expired deadline. Indeed, the court did not address this issue at all. There is no analysis of the relationship between Rule 15 and Rule 16 in this opinion. There is no discussion of the case

4

history to indicate whether the Court was applying Rule 16 because of the expired deadline or for another undisclosed reason.[2]

## II. UNDER THE LIBERAL PLEADING STANDARDS OF RULE 15(A), FLEMING SHOULD BE ALLOWED TO AMEND ITS COMPLAINT.

### A. Legal Standards: Under Fed.R.Civ.P. 15(a), leave to amend a complaint is liberally granted, and may only be denied if the delay is undue, motivated by bad faith, prejudicial to the opposing party, or if the amendment would be futile.

10. Under Fed.R.Civ.P. 15(a), leave to amend a complaint should be liberally granted. Foman v. Davis, 371 U.S. 178, 182 (1962); Adams, 739 F.2d at 867-868; Coventry, 856 F.2d at 519 (citing Heyl & Patterson Int'l, Inc. v. F. D. Ric, Inc., 663 F.2d 419, 425 (3d Cir. 1981) for the proposition, "[c]ourts have shown a strong liberality ... in allowing amendments under Rule 15(a)) (emphasis added); Boileau v. Bethlehem Steel Corp., 730 F.2d 929, 938 (3d Cir. 1984) (same). Leave to amend a complaint may only be denied if the delay is undue, motivated by bad faith, prejudicial to the opposing party or the amendment would be futile. See e.g., Adams, 739 F.2d at 867-868; U.S. v. Donald Lane Construction, 19 F. Supp. 2d 217, 221 (D. Del. 1998).

11. Mere delay without more is not sufficient grounds for denying leave to amend. Butcher & Singer, 105 F.R.D. at 452 ("the rule of this circuit... in evaluating the consequences of a party's undue delay in moving to amend a pleading is that delay alone, absent a showing of undue prejudice or unfair disadvantage to the nonmoving party as a result of the amendment, is an inadequate basis for denying a party leave to amend his pleadings") (citations omitted); Coventry, 856 F.2d at 520 (citing Cornell & Co. v. Occupational Safety & Health Review Comm., 573 F.2d 820 (3d Cir. 1978) for the proposition, "delay alone ... is insufficient ground to deny an amendment, unless the delay unduly prejudices the non-moving party."); Vision

---

[2] The remaining Third Circuit case Target cites provides no guidance to the present suit. Koplove v. Ford Motor Co., 795 F.2d 15 (3d Cir. 1986) concerned a motion for reconsideration of a grant of summary judgment, not a motion to amend a complaint.

Metals, 311 B.R. at 701 ("Delay, by itself, is not a sufficient reason for a court to deny a motion to amend a complaint.") (quoting In re Laramie Assoc., Ltd., 1997 WL 67848 at *6 (Bankr. E.D. Pa. 1997).).

12. Moreover, "[u]ndue prejudice is more than just inconvenience -- it requires a party to overhaul its entire litigation strategy. See Cureton, 252 F.3d at 274. See also Cuffy, 648 F. Supp. at 806

> Prejudice does not mean inconvenience to a party. Moreover, it is obvious that an amendment designed to strengthen the movant's legal position, will in some way harm the opponent. In the context of a 15(a) amendment, **prejudice means that the nonmoving party 'must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the ... amendments been timely."**
> Cuffy, 648 F. Supp. At 806 (quoting Heyl & Patterson Intern., 663 F.2d at 426).

As the party claiming prejudice, Target has the burden of showing it. Id.

13. Target primarily does this with a long litany of discovery it alleges it will now need. Opp. at 4. Fleming addresses these issues below, but even taking at face value each item on Target's list, the "necessity for defendant to conduct further discovery ... is not sufficient to show prejudice." Cuffy, 648 F. Supp. at 806 (citing Goodman v. Mead Johnson & Co., 534 F.2d 566, 569 (3d Cir. 1976)); See also In re Worldwide Direct, Inc., 2003 WL 22000600 at *3 ("need for additional discovery does not conclusively establish prejudice") (quoting Dole v. Arco Chemical Co., 921 F.2d 484, 488 (3d Cir. 1990)).

14. Finally, even the fact that Target has filed a partial motion for summary judgment is also insufficient to show prejudice. See Cuffy, 648 F. Supp. at 806 ("fact that the motion to amend was made after the motion for partial summary judgment does not require denying the plaintiff's motion) (citing Artman v. Int'l Harvester Co., 355 F. Supp. 476, 481 (W.D. Pa. 1972)).

//

**B. The requested amendments are not futile.**

15. A claim is futile for purposes of Fed.R.Civ.P. 15(a) if it "fail[s] to state a claim upon which relief could granted." In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1434 (3d Cir. 1997). See also Vision Metals, 311 B.R. at 701 ("'Futility' of amendment is shown when the claim or defense is not accompanied by a showing of plausibility sufficient to present a triable issue.") (citations omitted).

16. In "assessing 'futility,' the district court applies the same standard of legal sufficiency as Rule 12(b)(6). Burlington Coats, 114 F.3d at 1434. Unlike the moving party in Vision Metals, whose amended claims could not withstand a motion for judgment on the pleadings, Fleming's proposed amended Counts III and IV clearly state viable causes of action. Target apparently agrees, as it has not raised the futility point.

**C. Fleming's proposed amendments are not unduly prejudicial, have not been unduly delayed, and are not motivated by bad faith.**

17. The thrust of Target's opposition is that Fleming has waited too long (undue delay) to bring its proposed amended claims, perhaps for strategic purposes (bad faith motivation), and thus caused Target undue prejudice. Fleming demonstrates that none of this is true, first in connection with Count III and then in connection with Count IV.

**1. The Court should grant leave to amend Count III.**

18. As discussed in detail in Fleming's moving papers and in Fleming's Motion for Partial Summary Judgment, on May 6, 2003, Target sent Fleming a letter purporting to attribute to postpetition invoices roughly $1.5 million in previous payments on prepetition invoices. See Ex A to original Capozzola Aff. (in support of moving papers).[3] In doing so, Target hoped to create open prepetition liabilities to Fleming that Target could offset against prepetition volume

---

[3] Unless otherwise noted, all "Capozzola Aff." references are to the concurrently submitted Affidavit of Damian D. Capozzola in support of the PCT's Reply.

rebates Fleming owed to Target, thereby realizing the value of the rebates on a dollar for dollar basis instead of as an unsecured claim.

19. In its original formulation of Count III, Fleming incorporated paragraphs 1-29 and then represented that its claim was based on what "Target has stated" about the issues. To the extent Target claims that Fleming's original pleading was not clear, resolving any ambiguity is precisely the point of allowing Fleming to amend.[4] But beyond this, the summary judgment briefing on this issue demonstrates that Target knew what it was doing all along, and its actions were a disingenuous attempt to rewrite history. The Court should not permit Target to claim that it detrimentally relied on a factual assertion by Fleming when Target misled Fleming into making the factual assertion in the first place. Cf. Oshiver v. Levin, Fishbin, Sedran & Berman, 38 F.3d 1380, 1388-1389 (3d Cir. 1994) ("a party should not be permitted to profit from its own wrongdoing.") (citations omitted); LaVallee Northside Civic Assoc. v. Virgin Islands Coastal Zone Management Commission, 866 F.2d 616, 625 (3d Cir. 1989) ("Having unfairly lulled the plaintiff into inaction, the defendant may not profit by his wrongful conduct."); Nycoseal, Inc. v. Parke, Davis & Co., 28 F.R.D. 24, 25 (S. D. N. Y. 1961) ("the draftsmen of Fed.R.Civ.P. 15 quite obviously intended that a party who, on investigation of the facts, discovers that the matters in dispute are not as first supposed ought not to be required to stand on his initial formulation of claims or defenses.") (citations omitted).

20. Any bad faith in connection with these issues falls at Target's feet, and Target has only itself to blame for any prejudice it believes it will suffer if Fleming receives leave to amend. With regard to undue delay generally, and alleged additional discovery in particular, Fleming has already established that the potential inconvenience of needing to conduct new or additional

---

[4] Target's Opposition (at pp. 9-10) focuses on Original Complaint ¶ 29, and ignores proposed Amended ¶ 44. Amended ¶ 44 is part of the Amended Count III, which incorporates and clarifies the language in ¶ 29. In an effort to streamline its amended pleadings Fleming did not propose amended language to ¶ 29; however, to the extent the Court believes Fleming should have also amended ¶ 29, Fleming requests leave to conform ¶ 29 in the amended complaint with revised ¶ 44.

8

discovery is not grounds to deny leave to amend. Target would need to show that it would have to overhaul its entire litigation strategy, which it has not done with any specificity. Instead, in connection with Count III, Target raises only four specific concerns:

- The bases for the allegations in the Amended Complaint that Target put a hold on "prepetition invoices."
- The manner in which Fleming handled and accounted for its receipt of funds from Target when multiple invoices were due, particularly as of the time the bankruptcy case commenced.
- How Fleming's new allegations relate to the terms of Fleming's sell plans, which Fleming elsewhere has claimed govern the parties' business relationships.
- The specific discussions held between Fleming employees and Target employees in the months surrounding the bankruptcy filing about prepetition invoices and the rebates claimed by Target.

Opp. at 4 and Wildung Aff at 4.

21. The first point is meritless: Target's own misleading May 6, 2003 letter was the basis for the allegations, and the parties have thoroughly ventilated this issue in their cross motions for summary judgment. As for the other three points, the three most relevant witnesses would be Dana Bickford, Sarah Bishop, and Jon Tisch. Mr. Bickford and Ms. Bishop are both presently employed by the PCT. Mr. Bickford was Fleming's Vice-President of Retail Finance and Control -- he appeared for his deposition at Target's counsel's offices in Minneapolis and would do so again. Capozzola Aff. ¶ 3. Ms. Bishop was Fleming's Central Accounts Receivable Manager responsible for national chains, including Target -- the PCT has already offered to produce Ms. Bishop for deposition in Minneapolis if needed. Capozzola Aff. ¶ 3 and Ex. G (January 7, 2005 e-mail). Mr. Tisch was Fleming's on-site representative to Target -- he still lives in Minneapolis and has agreed to up to an hour of additional deposition testimony even though he has already been deposed for a full day. Capozzola Aff. ¶ 3.

22. In sum, Target can easily take any additional discovery it wishes to take on these issues, and therefore can not claim substantive prejudice in the sense of being precluded from developing evidence it might need for trial or of being forced to overhaul its entire litigation strategy. Under the Third Circuit's liberal standards for amending pleadings, the Court should grant Fleming leave to amend Count III.

### 2. The Court should grant leave to amend Count IV.

23. Target's opposition to Fleming's proposed amendment to Count IV shows that Target wants to have it both ways: Target wants the underlying January 23, 2002 letter agreement to be measured on an annual basis when it benefits Target and on some other undefined basis when it doesn't. Wordplay notwithstanding, the fact is that Target has adopted an annual construction of the underlying letter agreement, but withheld this view until the very end of the discovery period. But now that Target sees that an annual construction significantly strengthens Fleming's claim for post-petition breach of contract in violation of the automatic stay, Target wants to disclaim this position. The Court should forbid such duplicity.

24. In footnote 3 of its opposition papers, Target tries to distance itself from an annual construction of the January 23, 2002 letter agreement. But in its verified interrogatory responses and summary judgment motion papers, Target clearly adopted an annual construction, at least for that part of the letter agreement concerning business volumes. See Capozzola Aff. Ex. H (Target Response to Interrogatory No. 47) (letter agreement clause "volumes amounting to no less than current levels" means "the dollar amount of sales made by [Fleming] to Target in 2001"); Target Memorandum in Support of Partial Summary Judgment Motion at pp. 20-21 (D.I. No. 52) (repeatedly stating Target's interpretation that the letter agreement committed Target to purchase "$149 million in goods per year" from Fleming).

25. Target never directly confronts Fleming's contention that if business volumes are measured annually under the letter agreement, so too are service levels. Instead, Target skirts the issue by incorrectly asserting that there is "no evidence in the discovery record to support the

theory . . . that service levels under the 1/23/02 Letter Agreement were to be measured on an annualized basis." Wildung Aff. ¶ 12. This is wrong. Such evidence comes in significant part from the most senior Target employee involved with the Fleming relationship, Greg Duppler, who insisted that "We measure everything on an annual basis. Everything that I know of." Capozzola Aff. Ex. I (Duppler Dep.) at 99:8-99:10. This testimony mirrors documentary evidence generated by Brad Neuman, one of the two Target employees with direct responsibility for monitoring wholesaler service levels. Just weeks before the shootout, Mr. Neuman summarized for his superiors and the other members of the Target shootout team, Fleming's and SuperValu's service levels on an annual basis. Capozzola Aff. Ex. J (Dep. Ex. 72).

26. What is not in the record is any evidence to support the "heads I win, tails you lose" interpretation of the letter agreement Target now wishes to advance in order to maintain its motion for summary judgment against Fleming's prepetition breach and fraud claims without widening the door to Fleming's postpetition breach claims. To recap, Target's motion against Fleming's prepetition breach and fraud claims hinges on the idea that Target's post-shootout business volume dropoff did not result in a breach because on an annual basis Target's 2002 business volumes exceeded its 2001 business volumes. But Target premised its June 2003 termination of its relationship with Fleming on eight weeks of alleged substandard service levels. See Ex. E to original Capozzola Affidavit (Dep. Ex. 132). Given an annual construction of all aspects of the letter agreement, including service levels, Target would not have been justified in walking away from the relationship based solely on eight weeks of data in April and May. So it is clear that what Target really wants is to urge the Court to adopt a construction of the letter agreement in which some aspects of the letter agreement should be interpreted annually and others should not. This construction finds no support in the record, or in the law. Oster v. Medtronic, Inc., 428 N.W.2d 116, 119 (Minn. Ct. App., 1988) ("all clauses and provisions [of a contract] should be construed to harmonize with one another."); C.J.S Contracts § 322 ("Where there is nothing in the context to indicate otherwise, words used in one sense in a contract are deemed to have been used in the same sense in another part of the instrument.").

11

27. Target writes at considerable length about the prejudice it will allegedly suffer by being forced to engage in additional discovery on the issues surrounding Fleming's proposed Count IV. Opp. at 10-11. This should not move the Court. For starters, as discussed previously, the inconvenience of additional discovery does not comprise the prejudice required to deny leave to amend. See ¶¶ 4-6, 12-14, supra. Additionally, Target significantly contributed to this situation by failing to disclose its annual construction theory until the very end of the discovery period.

28. Discovery in this matter began in March, 2004 and concluded in January, 2005. In its May, 2004 responses to Fleming's first sets of discovery, Target did not mention its annual construction theory as a reason for why it was not in breach of the letter agreement. Instead, Target only mentioned (in relevant part) "the conditions set forth in the last full paragraph [of the letter agreement]" (which goes to service levels, not business volumes), and Fleming's alleged "performance failures" (which also goes to service levels). Capozzola Aff. Ex. K (Target Supplemental Response to Interrogatory No. 14). Had Target responded in a forthcoming manner and disclosed its annual construction theory in May, when it should have, Fleming could have amended its complaint of right under the scheduling order prior, to the July 30, 2004 cutoff in the original case management order. Instead, Target waited until it submitted discovery responses on January 10, 2005 -- the day before discovery closed -- to express its position with clarity. Capozzola Aff. Ex. H (Target Response to Interrogatory No. 47). In contrast, in May, 2004 Target's express position had been that it could not say "what is meant by 'volumes' or how [the letter agreement] is to be measured." Capozzola Aff. Ex. L (Target explanation of denial of Fleming Request for Admission No. 8).

29. Target raises seven alleged areas of additional discovery it would require if Fleming receives leave to amend to add Count IV for postpetition breach. The first six of these -- service level communications, service level calculations, the language of the letter agreement, industry interpretations of the language, what former Fleming employees thought about the language in the agreement, and discussions within Fleming after Target's June 2003 termination

12

-- are topics on which Target has already conducted significant discovery or has certainly had the opportunity to do so. As for the remaining topic, Fleming's damages for the postpetition breach, Target's footnote 4 generally describes the types of damages Fleming would seek; Fleming submits that it would not be difficult to explore these areas on an expedited basis prior to the start of trial.

30. In sum, Fleming initially chose not to plead a postpetition breach (which is strongest based on an annual construction) because of a potential conflict with its theories on prepetition breach (which is strongest based on a monthly construction). Target chooses to fight the issue of whether the contract should be interpreted monthly or annually, or some combination of the two, but did not clearly disclose that to Fleming until the end of discovery. Had Fleming known this was Target's theory, Fleming could have and would have amended its complaint accordingly to add an alternative claim for postpetition breach. Refusing to allow Fleming to do so would reward Target for its stonewalling. Any additional discovery can likely be completed prior to trial, but Fleming has already offered additional discovery to Target and has no objection to a short delay in the trial date if the Court decides this is appropriate.

### III. EVEN IF THE GOOD CAUSE STANDARD OF RULE 16 APPLIED -- WHICH IT DOES NOT -- THE COURT SHOULD STILL GRANT LEAVE TO AMEND.

31. Even if the good cause standard of Rule 16 applied -- which it does not -- Fleming has shown good cause for why it seeks to amend its complaint. The good cause standard of Rule 16 focuses upon the diligence of the party seeking to amend. See 1983 Advisory Committee Notes ("the court may modify the scheduling on a showing of good case if it cannot be met despite the diligence of the party seeking the extension."). Fleming has diligently worked to meet all of the Court's scheduling deadlines. The principal reason that Fleming now needs to amend is because Target misrepresented key facts to Fleming and was less than forthcoming about its litigation positions. In such situations, courts find good cause. See e.g., Sellers R.D., et. al. v. AVP Int'l, 1989 WL 102927, *2 (E.D. Pa. 1989) (finding good cause where the delay was due in part to actions by opposing party's counsel); Comuso v. Nat'l Railroad Passenger

13

Corp., 1998 WL 800342, *1 (E.D. Pa. 1998) (finding good cause where delay was caused by opposing party's actions); Welton v. Consolidated Rail Corp., 1993 WL 4176 (E.D. Pa. 1993) (finding good cause because defendant's need for extension of discovery was caused by plaintiff's answers in its discovery responses).

## CONCLUSION

32. For all of the foregoing reasons, Fleming respectfully requests that this Court grant the PCT's Motion to Amend its Complaint.

Dated: February 10, 2005

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.

*/s/ Scotta E. McFarland*

Laura Davis Jones (Bar No. 2436)
Scotta E. McFarland (Bar No. 4184)
919 North Market Street, 16th Floor
Post Office Box 8705
Wilmington, Delaware 19899-8705
(Courier No. 19801)
Telephone: (302) 652-4100
Facsimile: (312) 652-4400

and

KIRKLAND & ELLIS LLP
Eric C. Liebeler (CA Bar No. 149504)
Damian D. Capozzola (CA Bar No. 186412)
777 South Figueroa Street
Los Angeles, CA 90017
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

Co-Counsel for the Post Confirmation Trust